IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATT MADDOCK,

    Plaintiff,

v.

THE MICHIGAN HOUSE OF REPRESENTATIVES;
THE MICHIGAN HOUSE OF REPRESENTATIVES'
BUSINESS OFFICE; TABBATHA BIRMINGHAM,
in her official and personal capacities; JOSEPH TATE,
in his official capacity as The Speaker of the House for
the State of Michigan, and in his personal capacity;
DOUGLAS SIMON in his official capacity as Director
of the House Business office and in his personal
capacity; LISA CURTIS, deputy director of Michigan
House Business office, in her personal and official
capacities; and AMBER MCCANN, Press Secretary
for Speaker of the House, in her personal and official
capacities,

    Defendants.

Case No. _____

Hon. _____

## VERIFIED COMPLAINT

    Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.[1]  However, the Defendants in this case seem to disagree.  They believe that it is a proper function of government to restrict political speech on the basis of content and viewpoint.

---

[1] *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) (citing *Cohen v. California*, 403 U.S. 15, 24 (1971); *Street v. New York*, 394 U.S. 576 (1969); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-270 (1964), and cases cited; *NAACP v. Button*, 371 U.S. 415, 445 (1963); *Wood v. Georgia*, 370 U.S. 375, 388-389 (1962); *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)).

Michigan House of Representatives members are afforded the right to print newsletters for their constituents. This printing and mailing right is, however, contingent upon the newsletters being pre-approved by the House Business Office. That Office acts the part of state censor, and decides whether or not the content is acceptable. If it is not, then the newsletter will not be printed until the House Business Office is satisfied that it meets their requirements.

Some of their requirements are reasonable. For example, the rules prohibit using printing rights for personal use or for purposes that do not relate to the work of the legislature. However, the majority of the rules are so scorchingly unconstitutional that they must be struck down. For example, the rules prohibit legislators from publishing a newsletter if that newsletter criticizes the legislature, legislators, or other individuals, including the governor. In other words, the government prohibits publishing comments critical of the government. Lady Liberty weeps at the thought of it, and she will not be consoled until this abuse of the First Amendment ends.

## THE PARTIES

1. Plaintiff Matt Maddock is an elected member of the Michigan House of Representatives.

2. Defendant Tabbatha Birmingham is an Administrative Assistant in the House of Representatives Business Office, and is sued in her official and personal capacities.

3. Defendant the Michigan House of Representatives Business Office is organized by the Michigan House of Representatives, which is also sued here.

4. Defendant Joseph Tate is the Speaker of the House for the State of Michigan and is sued in his official and personal capacities.

5. Defendant Douglas Simon is the Director of the House of Representatives Business Office and is sued in his official and personal capacities.

6. Defendant Lisa Curtis is the Deputy Director of the House of Representatives Business Office and is sued in her personal and official capacities.

7. Defendant Amber McCann is the Press Secretary for Defendant Tate and is sued in her personal and official capacities.

## JURISDICTION AND VENUE

8. This Court possesses subject matter over the action pursuant to 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983. This Court possesses supplemental jurisdiction over the related claims arising under state law per 28 U.S.C. § 1367.

9. This Court possesses general personal jurisdiction over all Defendants as they are all residents and citizens of the State of Michigan or organized under the laws of the State of Michigan with a principal place of business therein.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) as one or more defendants resides in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

**A.  Structural Framework for House Member Printing**

11. Article IV, §§ 1 & 3 of the Michigan Constitution create a House of Representatives for the State of Michigan.

12. Art. IV, § 15, creates a Legislative Council which, among other things, authorizes services to be provided for the members of the legislature.

13. The Legislative Council of the Michigan Legislature first adopted certain Printing Rules on May 15, 1997, which have since been amended.

14. Rule 6 of the Legislative Council Printing Rules ("Printing Rules") says:

The Legislative Service Bureau's printing and mailing equipment shall be used for official legislative business only. Official legislative business is deemed to include all issues of statewide interest or of general interest to an entire legislative district. **The use of legislative equipment for the printing of personal or partisan material of any nature for a legislator is strictly prohibited.** The text of printing requests for members of the House shall be reviewed under procedures authorized by the Speaker of the House and the text of printing requests from members of the Senate shall be reviewed under procedures authorized by the Senate Majority Leader. Only printing the Bureau's equipment is capable of producing will be printed. **Some examples of specific references in legislative printings which are prohibited are** requests to vote for or against someone or some concept, solicitations of money for any purpose, or **negative comments about the institution of the legislature or a specific legislator.**

(emphasis added). See **Exhibit 1**.

15. The Michigan House Administration/Business Office, under procedures authorized by the Speaker of the House (Defendant Tate), promulgated the House of Representatives' Printing Guidelines, Rules and Procedures ("Printing Guidelines").

16. At all relevant times herein, Defendants Simon and Curtis, under the supervision of Defendant Tate, who acts by and through his Press Secretary, Defendant McCann, as well as through Defendant Birmingham, enforced and implemented the Printing Rules and Printing Guidelines.

17. Rule 3 of those Printing Guidelines reads, in relevant part:

3. The House Duplicating Center's and Legislative Service Bureau's printing and mailing equipment shall be used for official legislative business only. Only printing the HDC's or LSB's equipment is capable of producing will be printed. Official legislative business is deemed to include all issues of statewide interest or of general interest to an entire legislative district. The use of legislative equipment for the printing of personal or partisan material of any nature for a legislator is strictly prohibited. Examples of prohibited printed or electronic material include, but are not limited to:

…
g. Comments critical of the institution of the legislature, legislators or other individuals.

h. Impugn motives of legislators or other individuals, or accusations of intentional misrepresentation.

af. Issues intending to influence pending court cases. Issues related to a pending court case unless the issue is directly before the state legislature.

18. Neither the Printing Rules nor Printing Guidelines define what is "partisan," though both prohibit the printing of "partisan" material.

19. While one might think that, since Art. IV, § 15 designates the Legislative Council as "bi-partisan," the term "partisan" should simply mean that which is related to the Democratic and Republican parties, the examples used in the Printing Rules and Printing Guidelines go beyond references to the two parties.

20. Although the Printing Rules and Printing Guidelines have been in place for some time, each speaker of the house is authorized to enact rules for the House Business Office, and Defendant Tate has re-authorized these unconstitutional rules and guidelines and uses the power of the Speaker's Office to enforce them.

21. Both the Printing Rules and Printing Guidelines are viewpoint-based restrictions; they prohibit negative and critical comments, but allow positive and laudatory comments about the legislature, legislators, and other individuals.

22. Similarly, the Printing Guidelines prohibit impugning motives, but allow one to approve of someone's motives, and they prohibit asserting one is making an intentional misrepresentation, but allow one to assert someone is telling the truth.

**B.    Plaintiff Suffers an Unconstitutional Rejection of a Request to Print**

23. Plaintiff, Matt Maddock, has represented the 51st House District since 2019.

24. As an elected member of the Michigan House of Representatives, Maddock produces and prints newsletters to distribute to the public, through the Michigan House of Representatives' Business Office, consistent with the Printing Rules and Printing Guidelines.

25. However, prior to publishing any such newsletter, the content of the newsletter

must be submitted to the House Business Office, which reviews such under Rule 6 of the Printing Rules and Rule 3 of the Printing Guidelines.

26. In February 2024, Plaintiff sought to publish a newsletter.

27. Joseph Foley, Plaintiff's legislative aide, was advised that such required pre-approval prior to publication.

28. Thus, on February 14, 2024, Foley transmitted a draft of the newsletter to Defendant Birmingham.

29. A true and correct copy of that draft newsletter is filed herewith as **Exhibit 2**.

30. While Plaintiff and his team understood that the newsletter might need to be revised to comply with content-neutral formatting requirements, they were shocked and surprised by the response, as any American would be.

31. Birmingham responded that the newsletter violated "multiple portions of the printing guidelines," including Rule 3(g) & (h), and approval to print the newsletter was denied.

32. Birmingham included a copy of the Printing Guidelines in her response.

33. **Exhibit 3** is a true and correct copy of the response from Birmingham.

34. Thereafter, a different legislative aide for Plaintiff, Rachel Atwood, requested that Birmingham identify which portion of the proposed newsletter violated which rule.

35. Birmingham responded with a copy of the rules and with the alleged violations identified highlighted and annotated.

36. **Exhibit 4** is a true and correct copy of this second response from Birmingham.

37. One set of alleged violations of the Printing Guidelines was the use of Governor Whitmer's and Speaker Tate's names associated with criticism.

38. Another set of violations was highlighted for violating Rules 3(g) & (h).[2]

39. Each one of the highlighted portions was a critique of a state official or institution.

40. Birmingham did not deem the favorable invocation of Jesus Christ, by name, to violate the rules.

41. A reasonable person reading the draft newsletter would note its stark parallels with the Declaration of Independence. In fact, it was based upon that document.

42. If the aforementioned Printing Rules and Printing Guidelines were held unenforceable and Defendants enjoined from the enforcement thereof, Plaintiff would seek to publish his newsletter. These unconstitutional rules are the only impediment to the Plaintiff engaging in this constitutionally protected expression.

43. As a result of the aforementioned Printing Rules and Printing Guidelines, the residents of the 51st House District have been denied the ability to receive information from their duly-elected representative.

44. As a result of the aforementioned Printing Rules and Printing Guidelines and Defendants' actions in furtherance thereof, Plaintiff has suffered at least nominal damages, and otherwise suffered emotional distress, injury to reputation, and incurred legal fees.

## CLAIMS FOR RELIEF

### *Count I*
### Violation of the First Amendment to the United States Constitution
### (42 U.S.C. 1983 – First Amendment)

45. Plaintiff realleges each allegation in the preceding paragraphs.

---

[2] One other purported violation, a reference to *Missouri v. Biden*, was deemed to violate Rule 3(af), which prohibits "Issues intending to influence pending court cases. Issues related to a pending court case unless the issue is directly before the state legislature." Plaintiff is challenging Rule 3(af) as being applied in an unconstitutionally overbroad manor.

46. Printing Rule 6's prohibition against the publication of "partisan material," including the selective prohibition against "negative comments about the institution of the legislature or a specific legislator" violates the First Amendment of the U.S. Constitution, made applicable to the state pursuant to the Fourteenth Amendment.

47. Printing Guideline Rule 3(g) & (h)'s prohibition against the publication of "partisan material," including the selective prohibition against "comments critical of the institution of the legislature, legislators or other individuals" or that "impugn motives of legislators or other individuals, or accusations of intentional misrepresentation" violates the First Amendment of the U.S. Constitution, made applicable to the state pursuant to the Fourteenth Amendment.

48. The Rule 3(af) prohibition on discussing court cases is unconstitutional. There is no reason to restrain Representatives from talking about court cases, at all, but even if the prohibition on speaking about court cases is upheld facially, it is unconstitutional as applied. This prohibition restrained Plaintiff from discussing the unconstitutional actions taken by a sitting president, and would prohibit discussing any case that could even be implicated on appeal, if the way it is applied is upheld. For example, as there are challenges to *NYT v. Sullivan* percolating from time to time, even discussing that landmark case could be prohibited. Merely discussing a pending Supreme Court case should not be prohibited.

49. Defendants' restriction on Plaintiff's speech is content-based and viewpoint discriminatory and is in violation of the Free Speech Clause of the First Amendment and the Right to Petition the Government Clause of the First Amendment.

50. Defendants' individual acts to enforce Printing Rule 6 and Printing Guideline Rule 3(g), 3(h), and 3(af) are a prior restraint on speech and violates Plaintiff's First Amendment rights to freedom of speech and expression, and freedom of petition.

51. It is clearly established that a viewpoint based prior restraint on the publication of lawful speech violates the First Amendment.

52. Plaintiff may recover damages, including, but not limited to, nominal damages, along with obtaining declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for the deprivation of his rights per 42 U.S.C. § 1983.

53. Plaintiff intends to publish the newsletter upon the issuance of the injunctive and declaratory relief.  Plaintiff, therefore, requires a declaration that such publication was lawful and an injunction against Defendants from refusing to publish the newsletter and from enforcing Printing Rule 6 and Printing Guidelines Rule 3(g), 3(h), and 3(af).

### *Count II*
### Violation of the Article I, Section 3 and Section 5
### of the Michigan Constitution

54. Plaintiff realleges each allegation in the preceding paragraphs.

55. Printing Rule 6's prohibition against the publication of "partisan material," including the selective prohibition against "negative comments about the institution of the legislature or a specific legislator" violates Article I, §§ 3 & 5 of the Michigan Constitution.

56. Printing Guideline Rule 3(g), 3(h), & 3(af)'s prohibition against the publication of "partisan material," including the selective prohibition against "comments critical of the institution of the legislature, legislators or other individuals" or that "impugn motives of legislators or other individuals, or accusations of intentional misrepresentation," and prohibiting any discussing of court cases, violates Article I, §§ 3 & 5 of the Michigan Constitution.

57. Defendants' restriction on Plaintiff's speech is content-based and viewpoint discriminatory and is in violation of Article I, §§ 3 & 5 of the Michigan Constitution.

Verified Complaint

58.     Defendants' individual acts to enforce Printing Rule 6 and Printing Guideline Rule 3(g), 3(h), & 3(af) are a prior restraint on speech and violates Article I, §§ 3 & 5 of the Michigan Constitution.

59.     It is clearly established that a viewpoint based prior restraint on the publication of lawful speech violates Article I, §§ 3 & 5 of the Michigan Constitution.

60.     Plaintiff may recover damages, including, but not limited to, nominal damages, along with obtaining declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for the deprivation of his rights per Article I, §§ 3 & 5 of the Michigan Constitution.

61.     Plaintiff intends to publish the newsletter upon the issuance of the injunctive and declaratory relief.  Plaintiff, therefore, requires a declaration that such publication was lawful and an injunction against Defendants from refusing to publish the newsletter and from enforcing Printing Rule 6 and Printing Guidelines Rule 3(g) & (h).

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff Matt Maddock asks this Court to issue and or award:

A. A declaration that Printing Rule 6 violates the First Amendment of the U.S. Constitution;

B. A declaration that Printing Rule 6 violates Article I, §§ 3 & 5 of the Michigan Constitution;

C. A declaration that Printing Guideline Rule 3(g), 3(h), & 3(af) violates the First Amendment of the U.S. Constitution;

D. A declaration that Printing Guideline Rule 3(g), 3(h), & 3(af) violates Article I, §§ 3 & 5 of the Michigan Constitution;

E. A preliminary and permanent injunction against the enforcement of Printing Rule 6;

F. A preliminary and permanent injunction against the enforcement of Printing Guideline Rule 3(g), 3(h), & 3(af);

G. Actual Damages in an amount to be determined at trial;

H. Nominal Damages;

I. An award of attorneys' fees and expenses under 42 U.S.C. § 1988 and the Michigan Constitution; and

J. Any further relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all causes of action.

Dated: March 12, 2024.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com

Matthew J. Hoffer
SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, MI 48906
Tel : (517) 886-6560
Email : Matt@bradshaferlaw.com

*Counsel for Plaintiff,*
*Matt Maddock*

## VERIFICATION OF COMPLAINT

I, Matt Maddock, am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: March 12, 2024        By: _____
                                Matt Maddock

RANDAZZA | LEGAL GROUP