## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MATT MADDOCK,

        Plaintiff,

  v.

THE MICHIGAN HOUSE OF REPRESENTATIVES;
THE MICHIGAN HOUSE OF REPRESENTATIVES'
BUSINESS OFFICE; TABBATHA BIRMINGHAM,
in her official and personal capacities; JOSEPH TATE,
in his official capacity as The Speaker of the House for
the State of Michigan, and in his personal capacity;
DOUGLAS SIMON in his official capacity as Director
of the House Business office and in his personal
capacity; LISA CURTIS, deputy director of Michigan
House Business office, in her personal and official
capacities; and AMBER MCCANN, Press Secretary
for Speaker of the House, in her personal and official
capacities,

        Defendants.

Case No.  1:24-cv-00257

Hon. _____

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR INJUNCTION PENDING APPEAL

## <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF THE ISSUE PRESENTED ....................................................... vii

CONTROLLING AUTHORITY ..................................................................................... viii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 1

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................ 6

1.0    Plaintiff is Likely to Succeed on the Merits of his Claims ............................... 6

2.0    Plaintiff will Suffer Irreparable Harm in the Absence of Injunctive Relief ................ 10

3.0    The Balance of Equities Favors Plaintiff ...................................................... 10

4.0    The Public Interest Favors an Injunction ...................................................... 11

5.0    No Bond Should be Required ..................................................................... 11

CONCLUSION .......................................................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................................. 13

## **TABLE OF AUTHORITIES**

**CASES**

*Alexander v. United States,*
   509 U.S. 544 (1993)........................................................................................ 7

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.,*
   698 F.3d 885 (6th Cir. 2012) ....................................................................... 10

*Bantam Books, Inc. v. Sullivan,*
   372 U.S. 58 (1963).......................................................................................... 7

*Biden v. Missouri,*
   595 U.S. ___ (2022)........................................................................................ 4

*Cohen v. California,*
   403 U.S. 15 (1971).......................................................................................... 1

*Connection Distrib. Co. v. Reno,*
   154 F.3d 281 (6th Cir. 1998) ....................................................................... 11

*County Sec. Agency v. Ohio DOC,*
   296 F.3d 477 (6th Cir. 2002) ....................................................................... 10

*D.T. v. Sumner Cty. Sch.,*
   942 F.3d 324 (6th Cir. 2019) ......................................................................... 5

*De Jonge v. Oregon,*
   299 U.S. 353 (1937)........................................................................................ 1

*Elrod v. Burns,*
   427 U.S. 347 (1976)...................................................................................... 10

*Firecross Ministries v. Municipality of Ponce,*
   204 F. Supp. 2d 244 (D.P.R. 2002).............................................................. 10

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
   23 F.3d 1071 (6th Cir. 1994) ....................................................................... 11

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019).................................................................................... 8

*Kinney v. Barnes,*
   443 S.W.3d 87 (Tex. 2014)............................................................................ 7

*Lucas v. Monroe Cnty.,*
   203 F.3d 964 (6th Cir. 2000) ......................................................................... 6

*Marshall v. Amuso*,
   571 F. Supp. 3d 412 (E.D. Pa. 2021) ............................................................... 8

*Matal v. Tam*,
   137 S. Ct. 1744 (2017) ..................................................................................... 8

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ......................................................................................... 8

*Michigan State AFL-CIO v. Civil Serv. Comm'n*,
   208 Mich. App. 479, 528 N.W.2d 811 (1995) ................................................. 6

*Michigan State AFL-CIO v. Civil Serv. Comm'n*,
   455 Mich. 720, 566 N.W.2d 258 (1997) ......................................................... 6

*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*,
   984 F.3d 477 (6th Cir. 2020) .......................................................................... 5

*NAACP v. Button*,
   371 U.S. 415 (1963) ......................................................................................... 1

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 530 (1976) ......................................................................................... 7

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ......................................................................................... 1

*Novak v. City of Parma*,
   932 F.3d 421 (6th Cir. 2019) .......................................................................... 7

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ....................................................................................... 10

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*,
   305 F.3d 566 (6th Cir. 2002) .......................................................................... 5

*Parratt v. Taylor*,
   451 U.S. 527 (1981) ......................................................................................... 6

*Police Dep't of Chi. v. Mosley*,
   408 U.S. 92 (1972) ........................................................................................... 1

*Procter & Gamble v. Bankers Trust Co.*,
   78 F.3d 219, 225 (6th Cir. 1996) .................................................................... 8

*R. A. V. v. St. Paul*,
   505 U.S. 377 (1992) ......................................................................................... 9

RANDAZZA | LEGAL GROUP

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ................................................................ 8

*Roman Catholic Diocese v. Cuomo,*
141 S. Ct. 63 (2020) ............................................................... 10

*Scotts Co. v. United Indus. Corp.,*
315 F.3d 264 (4th Cir. 2002) ................................................ 11

*Se. Promotions, Ltd. v. Conrad,*
420 U.S. 546 (1975) ................................................................ 7

*Signs for Jesus v. Town of Pembroke,*
977 F.3d 93 (1st Cir. 2020) ..................................................... 8

*Sisters For Life, Inc. v. Louisville-Jefferson Cnty.,*
56 F.4th 400 (6th Cir. 2022) ................................................. 10

*Smith v. City of Holland Bd. of Pub. Works,*
102 F. Supp. 2d 422 (W.D. Mich. 2000) ............................... 6

*Street v. New York,*
394 U.S. 576 (1969) ................................................................ 1

*Terminiello v. Chicago,*
337 U.S. 1 (1949) .................................................................... 1

*Thomas v. Collins,*
323 U.S. 516 (1945) ................................................................ 9

*United States v. Alvarez,*
567 U.S. 709 (2012) ................................................................ 9

*Wood v. Georgia,*
370 U.S. 375 (1962) ................................................................ 1

*Woodland v. Michigan Citizens Lobby,*
423 Mich. 188, 378 N.W.2d 337 (1985) ............................... 6

*Workman v. Bredesen,*
486 F.3d 896 (6th Cir. 2007) ................................................. 5

*WV Assn'n of Club Owners v. Musgrave,*
553 F.3d 292 (4th Cir. 2009) ............................................... 10

**STATUTES**

42 U.S.C. § 1983 .............................................................. ix, 6

**OTHER AUTHORITIES**

SOBCHAK, W., THE BIG LEBOWSKI, 1998 .................................................................. 7

**RULES**

Fed. R. App. P. 8 ...................................................................................................... ix, 5

Fed. R. Civ. P. 65 ..................................................................................................... ix, 5

**CONSTITUTIONAL PROVISIONS**

Michigan Const., Art. I, Sec. 3 ............................................................................ viii, ix

Michigan Const., Art. I, Sec. 5 ............................................................................ viii, ix

Michigan Const., Art. IV, Sec. 1 ................................................................................. 2

Michigan Const., Art. IV, Sec. 15 ....................................................................... 2, 3, 7

Michigan Const., Art. IV, Sec. 3 ................................................................................. 2

U.S. Const. Amend. I ........................................................................................ viii, ix, 6

U.S. Const. Amend. XIV ............................................................................................ ix

RANDAZZA | LEGAL GROUP

Plaintiff's Brief in Support of Motion for a Preliminary Injunction

## CONCISE STATEMENT OF THE ISSUE PRESENTED

1)      Whether Legislative Council Printing Rule 6 violates the First Amendment of the U.S. Constitution and/or Art. I, §§ 3 & 5 of the Michigan Constitution?

2)      Whether House of Representatives Printing Guidelines Rule 3(g), 3(h), & 3(af) violates the First Amendment of the U.S. Constitution and/or Art. I, §§ 3 & 5 of the Michigan Constitution?

3)      Whether the Court should enjoin the promulgation and enforcement of the aforementioned rules through a preliminary injunction?

4)      Whether the Court should enjoin the promulgation and enforcement of the aforementioned rules pending appeal should the Court deny a preliminary injunction?

## <u>CONTROLLING AUTHORITY</u>

1)      42 U.S.C. § 1983/U.S. Const. Amend. I & XIV;

2)      Art. I, §§ 3 & 5 of the Michigan Constitution;

3)      Fed. R. Civ. P. 65; and

4)      Fed. R. App. P. 8.

Plaintiff's Brief in Support of Motion for a Preliminary Injunction

## INTRODUCTION

Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.[1]  However, the Defendants in this case seem to disagree.  They believe that it is a proper governmental function to restrict the content and viewpoints in political speech.  They are wrong.

Plaintiff, Matt Maddock, is the duly-elected representative of the 51st House District for the Michigan legislature.  Like all legislators, he has the right to use official resources to publish a newsletter for his constituents.  However, the rules governing such publication constitute a viewpoint-based prior restraint in violation of the U.S. and Michigan constitutions.  Injunctive relief from this Court, in the form of a preliminary injunction is necessary to preclude enforcement of the unconstitutional rules.  Should such be denied, Rep. Maddock requests, in the alternative, an injunction pending appeal.

## STATEMENT OF FACTS

Plaintiff, Matt Maddock, is an elected member of the Michigan House of Representatives and has represented the 51st House District since 2019.  (ECF No. 1 at ¶¶ 1 & 23).  As an elected member of the Michigan House of Representatives, Maddock produces and prints newsletters to distribute to the public, through the Michigan House of Representatives' Business Office, consistent with the Printing Rules and Printing Guidelines.  ECF No. 1 at ¶ 24.  However, prior to publishing any such newsletter, the content of the newsletter must be submitted to the House

---

[1] *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) (citing *Cohen v. California*, 403 U.S. 15, 24 (1971); *Street v. New York*, 394 U.S. 576 (1969); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-270 (1964), and cases cited; *NAACP v. Button*, 371 U.S. 415, 445 (1963); *Wood v. Georgia*, 370 U.S. 375, 388-389 (1962); *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)).

Business Office, which reviews such under Rule 6 of the Printing Rules and Rule 3 of the Printing

Guidelines.  ECF No. 1 at ¶ 25; ECF No. 1-1.

The Legislative Council of the Michigan Legislature first adopted certain Printing Rules

on May 15, 1997, which have since been amended.[2]  ECF No. 1 at ¶ 13.  Rule 6 of the Legislative

Council Printing Rules ("Printing Rules") says:

> The Legislative Service Bureau's printing and mailing equipment shall be used for
> official legislative business only. Official legislative business is deemed to include
> all issues of statewide interest or of general interest to an entire legislative district.
> **The use of legislative equipment for the printing of personal or partisan**
> **material of any nature for a legislator is strictly prohibited.** The text of printing
> requests for members of the House shall be reviewed under procedures authorized
> by the Speaker of the House and the text of printing requests from members of the
> Senate shall be reviewed under procedures authorized by the Senate Majority
> Leader. Only printing the Bureau's equipment is capable of producing will be
> printed. **Some examples of specific references in legislative printings which are**
> **prohibited are** requests to vote for or against someone or some concept,
> solicitations of money for any purpose, or **negative comments about the**
> **institution of the legislature or a specific legislator.**

(emphasis added).  ECF No. 1 at ¶ 14; *see also,* ECF No. 1-1.

The Michigan House Administration/Business Office (the name used by Defendant

Michigan House of Representatives Business Office, under procedures authorized by the Speaker

of the House (Defendant Joseph Tate)), promulgated the House of Representatives' Printing

Guidelines, Rules and Procedures ("Printing Guidelines").  ECF No. 1 at ¶¶ 3, 4 & 15.  Defendants

Douglas Simon (Director of the Business Office) and Lisa Curtis (Deputy), under the supervision

of Defendant Tate, who acts by and through his Press Secretary, Defendant Amber McCann, as

well as through Defendant Tabbatha Birmingham, enforced and implemented the Printing Rules

and Printing Guidelines.  *Id.* at ¶¶ 2, 5, 6, 7 & 16.  Rule 3 of those Printing Guidelines reads, in

---

[2] Article IV, §§ 1 & 3 of the Michigan Constitution create a House of Representatives for the
State of Michigan.  ECF No. 1 at ¶ 11. Art. IV, § 15, creates a Legislative Council which, among
other things, authorizes services to be provided for the members of the legislature.  *Id.* at ¶ 12.

relevant part:

> 3.  The House Duplicating Center's and Legislative Service Bureau's printing and mailing equipment shall be used for official legislative business only. Only printing the HDC's or LSB's equipment is capable of producing will be printed. Official legislative business is deemed to include all issues of statewide interest or of general interest to an entire legislative district. The use of legislative equipment for the printing of personal or partisan material of any nature for a legislator is strictly prohibited. Examples of prohibited printed or electronic material include, but are not limited to:
> …
> g. Comments critical of the institution of the legislature, legislators or other individuals.
>
> h. Impugn motives of legislators or other individuals, or accusations of intentional misrepresentation.
>
> af. Issues intending to influence pending court cases. Issues related to a pending court case unless the issue is directly before the state legislature.

ECF No. 1 at ¶ 17; ECF No. 1-3.  Neither the Printing Rules nor Printing Guidelines define what is "partisan," though both prohibit the printing of "partisan" material.  ECF No. 1 at ¶ 18.

While one might think that, since Art. IV, § 15 designates the Legislative Council as "bi-partisan," the term "partisan" should simply mean that which is related to the Democratic and Republican parties, the examples used in the Printing Rules and Printing Guidelines go beyond references to the two parties.  ECF No. 1 at ¶ 19.  Both the Printing Rules and Printing Guidelines are viewpoint-based restrictions; they prohibit negative and critical comments, but allow positive and laudatory comments about the legislature, legislators, and other individuals.  *Id.*  at ¶ 21. Similarly, the Printing Guidelines prohibit impugning motives, but allow one to approve of someone's motives, and they prohibit asserting one is making an intentional misrepresentation, but allow one to assert someone is telling the truth. *Id.*  at ¶ 22.

In February 2024, Plaintiff Maddock sought to publish a newsletter.  ECF No. 1 at ¶ 26. Joseph Foley, Plaintiff's legislative aide, was advised that such required pre-approval prior to publication.  *Id.* at ¶ 27.  Thus, on February 14, 2024, Foley transmitted a draft of the newsletter

---

to Defendant Birmingham.  *Id.* at ¶¶ 28-29; *see also* ECF No. 1-3.

While Plaintiff and his team understood that the newsletter might need to be revised to comply with content-neutral formatting requirements, they were shocked and surprised by the response.  ECF No. 1 at ¶ 30.  Defendant Birmingham responded that the newsletter violated "multiple portions of the printing guidelines," including Rule 3(g) & (h), and approval to print the newsletter was denied.  ECF No. 1 at ¶¶ 31 & 33; *see also* ECF No. 1-3  Birmingham included a copy of the Printing Guidelines in her response.  ECF No. 1 at ¶¶ 32-33 and ECF No. 1-3.

Thereafter, a different legislative aide for Plaintiff, Rachel Atwood, requested that Birmingham identify which portion of the proposed newsletter violated which rule.  ECF No. 1 at ¶ 34.  Birmingham responded with a copy of the rules and with the alleged violations identified highlighted and annotated.  *Id.* at ¶¶ 35-36; *see also,* ECF No. 1-4.

One set of alleged violations of the Printing Guidelines was the use of Governor Whitmer's and Speaker Tate's names associated with criticism.  ECF No. 1 at ¶ 37; ECF No. 1-4. Another set of violations was highlighted for violating Rules 3(g) & (h).[3] ECF No. 1 at ¶ 38; ECF No. 1-4. Each one of the highlighted portions was a critique of a state official or institution. ECF No. 1 at ¶ 39; ECF No. 1-4. Birmingham did not deem references to "Republican" and "Democrat" as violating this rule against partisan publication. *Id.*; ECF No. 1 at ¶ 40.

A reasonable person reading the draft newsletter would note its stark parallels with the Declaration of Independence.  ECF No. 1 ¶ 41; ECF No. 1-4.  In fact, it was based upon that

---

[3] One other purported violation, a reference to *Missouri v. Biden*, was deemed to violate Rule 3(af), which prohibits "Issues intending to influence pending court cases. Issues related to a pending court case unless the issue is directly before the state legislature."  Plaintiff also challenges this rule as being overbroad, at least as applied, as there is no rationale for banning speech about a case taking place in another circuit or before the Supreme Court, due to concerns about "influencing" the case.

document.  ECF No. 1 at ¶ 41.  The Defendants have literally prohibited the publication of the Declaration of Independence.

If the aforementioned Printing Rules and Printing Guidelines were held unenforceable and Defendants enjoined from the enforcement thereof, Plaintiff would publish his newsletter.  ECF No. 1 at ¶ 42.  As a result of the aforementioned Printing Rules and Printing Guidelines, the residents of the 51st House District have been denied the ability to receive information from their duly-elected representative.  *Id.* at ¶ 43.  As a result of the aforementioned Printing Rules and Printing Guidelines and Defendants' actions in furtherance thereof, Plaintiff has suffered at least nominal damages, and otherwise suffered emotional distress, injury to reputation, and incurred legal fees.  *Id.* at ¶ 44.

## LEGAL STANDARD

Obtaining a preliminary injunction under Fed. R. Civ. P. 65 requires four elements.  *See Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007).  "Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest."  *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019).  A court assessing whether to grant injunctive relief pending appeal under Fed. R. App. P. 8 considers "(1) whether the applicant is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably harmed absent the injunction; (3) whether the injunction will injure the other parties; and (4) whether the public interest favors an injunction."  *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020).  Obtaining a preliminary injunction requires the "same analysis."  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002).  Plaintiff meets all four factors.

## **ARGUMENT**

A viewpoint-based prior restraint on Plaintiff's speech is anathema to the First Amendment and the Michigan Constitutional freedoms of speech and petition. It is untenable to say that one can praise Gov. Whitmer or Speaker Tate, but not criticize them. It is horrifying to suggest that there are government rules that say you cannot criticize former President Trump for saying he won the 2020 election, but that same rule permits you to laud President Biden for declaring victory. So long as Rep. Maddock's newsletter content is germane to the representation he provides his constituents, the viewpoint-based prior restraints must be enjoined.

### 1.0 **Plaintiff is Likely to Succeed on the Merits of his Claims**

The essential elements of a claim under 42 U.S.C. § 1983 are that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor,* 451 U.S. 527, 535 (1981). There is no legitimate dispute that Defendants are acting under color of state law—thus, the only issue that may require discussion is whether they deprived Plaintiff of his constitutional rights. They did.[4]

As set forth above Rule 6 of the Legislative Council Printing Rules prohibits "partisan material," with a specific prohibition on "negative comments about the institution of the legislature or a specific legislator." And, Rule 3 of the Printing Guidelines also prohibits "partisan material,"

---

[4] Plaintiffs' claims arise under both the First Amendment and the Michigan Constitution. However, a separate analysis is not necessary for each because "[t]he rights protected under [Article I] of the Michigan Constitution are coterminous to the rights afforded by the First Amendment of the United States Constitution." *Smith v. City of Holland Bd. of Pub. Works*, 102 F. Supp. 2d 422, 430 (W.D. Mich. 2000) (citing *Michigan State AFL-CIO v. Civil Serv. Comm'n*, 208 Mich. App. 479, 489 n.7, 528 N.W.2d 811 (1995), *reversed on other grounds*, 455 Mich. 720, 566 N.W.2d 258 (1997)); *see also Lucas v. Monroe Cnty.*, 203 F.3d 964, 972 n.4 (6th Cir. 2000) ("Because Plaintiffs' rights under the Michigan Constitution essentially track those guaranteed by the United States Constitution, the same analysis applies to the corresponding state claims." (citing *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 202, 378 N.W.2d 337 (1985))).

with a specific prohibition on:

> g. Comments critical of the institution of the legislature, legislators or other individuals.
>
> h. Impugn[ing the] motives of legislators or other individuals, or accusations of intentional misrepresentation.
>
> af. Issues intending to influence pending court cases. Issues related to a pending court case unless the issue is directly before the state legislature.

Neither the Printing Rules nor Printing Guidelines define what is "partisan," though both prohibit the printing of "partisan" material.  While one might think that, since Art. IV, § 15 designates the Legislative Council as "bi-partisan," the term "partisan" should simply mean that which is related to the Democratic and Republican parties, the examples used in the Printing Rules and Printing Guidelines go beyond references to the two parties.  In fact, as indicated by the newsletter sought to be printed by Plaintiff, mention of the two major political parties is not prohibited.

At the outset, the requirement that the Business Office approve the newsletter prior to publication constitutes an unlawful prior restraint.  A prior restraint is an "administrative" or "judicial order[]" that forbids protected speech in advance. *Alexander v. United States*, 509 U.S. 544, 550 (1993). The First Amendment guarantees "greater protection from prior restraints." *Id*. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 530, 559 (1976). "The Supreme Court has roundly rejected prior restraint." *Kinney v. Barnes*, 443 S.W.3d 87, 91 n.7 (Tex. 2014) (citing Sobchak, W., The Big Lebowski, 1998)). Prior restraints "bear a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Indeed, the courts "generally presume prior restraints are unconstitutional." *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) citing *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975).  A prior restraint is permissible if the restrained speech poses "a grave threat to a

critical government interest or to a constitutional right." *Procter & Gamble v. Bankers Trust Co.*, 78 F.3d 219, 225, 227 (6th Cir. 1996).  Here, nothing could warrant the imposition of Defendants' prior restraint—there is no legitimate government interest, let alone a grave threat to one, and the only constitutional right threatened is Plaintiff's.

Defendants' rules constitute unconstitutional viewpoint discrimination.  "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")).  Both the Printing Rules and Printing Guidelines are viewpoint-based restrictions; prohibiting negative and critical comments, but allowing positive and laudatory comments about the legislature, legislators and other individuals.  Similarly, the Printing Guidelines prohibit impugning motives, but allow one to approve of someone's motives, and they prohibit asserting one is making an intentional misrepresentation, but allow one to assert someone is telling the truth.

Defendants prohibited Rep. Maddock from criticizing Gov. Whitmer and Speaker Tate. This is unconstitutional content/viewpoint discrimination.  Content-based and viewpoint-based restrictions are subject to strict scrutiny. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014), "[s]uch 'requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest,'" *Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 101 (1st Cir. 2020) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)).

Such restrictions must also be "necessary." *R. A. V. v. St. Paul*, 505 U.S. 377, 395 (1992). The rules at issue serve no compelling interest and are not narrowly tailored.

First, there is no compelling government interest in prohibiting negative comments or impugning motives, yet permitting positive comments or agreeing with motivations. Constituents are not benefitted by self-serving aggrandizement; they deserve to know the truth.

Second, there is no compelling government interest in prohibiting accusations of intentional misrepresentation. Particularly where a legislator is advising his constituents on the government's conduct, it is chilling to imagine giving the government the power to decide which reporting is "false" in its sole opinion, and to give it the power to threaten a journalist with criminal or civil action if that journalist does not get in line with what the government says is "true."

> It cannot be the duty, because it is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the truth from the false for us.[5]

There is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012). The government does not get to decide truth or falsity, especially when it comes to the "true" or "false" opinions. The government is a poor arbiter of truth, especially when it may have a vested interest in stifling the dissemination of unflattering, yet accurate, information. History is replete with examples of governments lying to the public. Rep. Maddock cannot be constrained to say Gov. Whitmer or Speaker Tate, or any other official, is not lying if he has reason to believe they are. There is further no governmental interest in the prohibition of Rule 3(af). The government has no intent in restraining political speech pertaining to every legal case. In fact, the prohibition is likely unconstitutional in all respects, but it certainly

---

[5] *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J. concurring).

is unconstitutional as applied, when it prohibited discussion of a case in another circuit. This prohibition would have, for example, prohibited expressing support for marriage equality before *Obergefell v. Hodges*, 576 U.S. 644 (2015), or speech for or against abortion rights ever.

Thus, Plaintiff is likely to succeed on the merits of his claims.

## 2.0    Plaintiff will Suffer Irreparable Harm in the Absence of Injunctive Relief

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[A] plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if a plaintiff demonstrates a likelihood of success on the merits of his First Amendment claim, he necessarily also establishes irreparable harm. *See Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 408 (6th Cir. 2022) citing *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam).

## 3.0    The Balance of Equities Favors Plaintiff

When the government restricts speech, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.")  "[W]hen First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *County Sec. Agency v. Ohio DOC*, 296 F.3d 477, 485 (6th Cir. 2002). "The other factors are essentially encompassed by the analysis of the movant's likelihood of success on the merits." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 890 (6th Cir. 2012).  Failing to grant the requested injunction will continue to deprive Rep.

Maddock of his constitutional rights.  Defendants will suffer no harm.  An injunction will restore the rights guaranteed by the U.S. and Michigan Constitutions.

**4.0     The Public Interest Favors an Injunction**

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)). Plaintiff established a likelihood of success on the merits of his constitutional claims; an injunction to prevent further irreparable constitutional harm is in the public interest.  Moreover, it is in the public interest to be able to hear honest, uncensored, and balanced information from one's elected officials.

**5.0     No Bond Should be Required**

A bond should only be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). Defendants will suffer no harm.  An injunction will repair the *status quo* and allow the First Amendment to flourish. Rep. Maddock requests that the injunction issue with no bond required.

**<u>CONCLUSION</u>**

Printing Rule 6 and Printing Guideline Rule 3(g), 3(h), & 3(af), and Defendants' enforcement thereof must be enjoined now; Plaintiff's constituents cannot be allowed to be left in the dark by Defendants' one-sided, rose-colored view of government and its actors.  If the Court is disinclined to enter a preliminary injunction, it should do such pending appeal.

Dated: March 12, 2024.                              Respectfully Submitted,

                                                    /s/ Marc J. Randazza
                                                    Marc J. Randazza
                                                    RANDAZZA LEGAL GROUP, PLLC
                                                    30 Western Avenue
                                                    Gloucester, MA 01930
                                                    Tel: (888) 887-1776

Email: ecf@randazza.com

Matthew J. Hoffer
SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, MI 48906
Tel : (517) 886-6560
Email : Matt@bradshaferlaw.com

*Counsel for Plaintiff,*
*Matt Maddock*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of W.D. Mich. L. Civ. R. 7.2(b)(i) because this brief contains 3,855 words, excluding the parts of the brief exempted by W.D. Mich. L. Civ. R. 7.2(b)(i).  The word count was generated using Microsoft Word for Mac, Version 16.71.1

Dated: March 12, 2024.                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com