IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATT MADDOCK,

    Plaintiff,

v.

THE MICHIGAN HOUSE OF REPRESENTATIVES;
THE MICHIGAN HOUSE OF REPRESENTATIVES'
BUSINESS OFFICE; TABBATHA BIRMINGHAM,
in her official and personal capacities; JOSEPH TATE,
in his official capacity as The Speaker of the House for
the State of Michigan, and in his personal capacity;
DOUGLAS SIMON in his official capacity as Director
of the House Business office and in his personal
capacity; LISA CURTIS, deputy director of Michigan
House Business office, in her personal and official
capacities; and AMBER MCCANN, Press Secretary
for Speaker of the House, in her personal and official
capacities,

    Defendants.

Case No. 1:24-cv-00257-RJJ-SJB

Hon. Robert J. Jonker

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION OR, IN THE ALTERNATIVE, FOR INJUNCTION PENDING APPEAL**

## **TABLE OF CONTENTS**

1.0   INTRODUCTION ................................................................................................. 1

   2.1   M<small>ADDOCK IS</small> L<small>IKELY TO</small> P<small>REVAIL ON THE</small> M<small>ERITS</small> ........................................................... 1

      2.1.1   The Printing Rules Do Not Regulate "Government Speech" ...................................... 1

      2.1.2   Defendants' Restrictions on Speech are Viewpoint-Based and Do Not Satisfy Strict Scrutiny ............................................................................................................................. 5

      2.1.3   Maddock's Claims are Not Barred by Sovereign Immunity ....................................... 7

   2.2   M<small>ADDOCK WILL</small> S<small>UFFER</small> I<small>RREPARABLE</small> H<small>ARM IN THE</small> A<small>BSENCE OF AN</small> I<small>NJUNCTION</small> ....... 8

   2.3   T<small>HE</small> B<small>ALANCE OF</small> E<small>QUITIES</small> T<small>IPS IN</small> M<small>ADDOCK'S</small> F<small>AVOR</small> ................................................. 8

   2.4   T<small>HE</small> R<small>EQUESTED</small> I<small>NJUNCTION</small> W<small>OULD</small> F<small>AVOR THE</small> P<small>UBLIC</small> I<small>NTEREST</small> ............................ 9

   2.5   T<small>HE</small> C<small>OURT</small> S<small>HOULD</small> I<small>SSUE AN</small> I<small>NJUNCTION</small> P<small>ENDING</small> A<small>PPEAL AND</small> R<small>EQUIRE</small> N<small>O</small> B<small>OND</small> . 9

3.0   CONCLUSION ........................................................................................................ 10

## **TABLE OF AUTHORITIES**

**CASES**

*Acrisure, LLC v. Edgewood Partners Ins. Ctr.*,
   No. 1:19-cv-170, 2019 U.S. Dist. LEXIS 244770 (W.D. Mich. Mar. 11, 2019) ......................... 8

*Brooks v. Roberts*,
   251 F. Supp. 3d 401 (N.D.N.Y. 2017) ................................................................................. 8

*Ex Parte Young*,
   209 U.S. 123 (1908) ............................................................................................................. 7

*Fischer v. Thomas*,
   52 F.4th 303 (6th Cir. 2022) .............................................................................................. 10

*Gerber v. Herskovitz*,
   No. 19-13726, 2022 U.S. Dist. LEXIS 67439 (E.D. Mich. Apr. 11, 2022) ......................... 10

*Johanns v. Livestock Mktg. Ass'n*,
   544 U.S. 550 (2005) ............................................................................................................. 3

*Matal v. Tam*,
   582 U.S. 218 (2017) ................................................................................................. 2, 4, 5, 6

*McCullen v. Coakley*,
   573 U.S. 464 ........................................................................................................................ 5

*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*,
   984 F.3d 477 (6th Cir. 2020) ............................................................................................... 1

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569, 118 S. Ct. 2168 (1998) ................................................................................... 7

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ............................................................................................................. 2

*Prairie Band Potawatomi Nation v. Wagnon*,
   476 F.3d 818 (10th Cir. 2007) ............................................................................................. 7

*R.A.V. v. St. Paul*,
   505 U.S. 377 (1992) ............................................................................................................. 6

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ............................................................................................................. 6

*Regan v. Taxation with Representation*,
   461 U.S. 540 (1983) ............................................................................................................. 6

*Scotts Co. v. United Indus. Corp.*,
 315 F.3d 264 (4th Cir. 2002) ................................................................................ 10

*Shurtleff v. City of Boston*,
 142 S. Ct. 1583 (2022) ............................................................................................ 2

*Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*,
 56 F.4th 400 (6th Cir. 2022) ................................................................................... 8

*UAW-Ford Nat'l Educ. Dev. & Training Ctr. v. Detroit*,
 No. 242809, 2004 Mich. App. LEXIS 710 (Mich. Ct. App. Mar. 11, 2004) .............. 3

*Univ. of Cincinnati Chapter v. Williams*,
 No. 1:12-cv-155, 2012 U.S. Dist. LEXIS 89177 (S.D. Ohio June 27, 2012) .......... 10

*Urban Justice Ctr. v. Silver*,
 66 A.D. 3d 567 (N.Y. App. Div. 2009) ................................................................ 6, 8

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

Plaintiff Matt Maddock hereby files his reply in support of his Motion for a Preliminary Injunction or, in the Alternative, for Injunction Pending Appeal.

## 1.0 INTRODUCTION

Defendants' Opposition to Maddock's Motion largely incorporates by reference arguments it makes in its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The problem with this approach is that Defendants provided no evidence to support any of their arguments, even though their primary argument, that the First Amendment is not implicated here because of government-speech doctrine, is an inherently fact-specific inquiry. Defendants' regulations cannot apply to Maddock's speech, which is not government speech, and they constitute viewpoint-based discrimination with no justification. The Court should enter a preliminary injunction enjoining enforcement of these restrictions against Maddock.

## 2.0 ARGUMENT

In determining whether to issue a preliminary injunction, the Court must weigh four factors: (1) likelihood of success on the merits, (2) existence of irreparable harm, (3) whether the injunction will injure the other parties, and (4) whether the public interest favors the injunction. *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020). As Defendants acknowledge, the likelihood of success is outcome-determinative in First Amendment cases.

### 2.1 Maddock is Likely to Prevail on the Merits

#### 2.1.1 The Printing Rules Do Not Regulate "Government Speech"

Defendants argue that, categorically, any statement anyone wishes to publish pursuant to the Printing Rules and Printing Guidelines is government speech. In doing so, they discuss three kinds of evidence courts typically look at: "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the

government has actively shaped or controlled the expression." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022). What they ignore from *Shurlteff* is that "[t]o prevent the government-speech doctrine from being used as a cover for censorship, courts must focus on the identity of the speaker. The ultimate question is whether the government is actually expressing its own views or the real speaker is a private party and the government is surreptitiously engaged in the 'regulation of private speech.'" *Id*. at 1595-96 (2022) (Alito, J., concurring), quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). As the Supreme Court recognized, the government speech doctrine "is susceptible to dangerous misuse. If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. For this reason, we must exercise great caution before extending our government-speech precedents." *Matal v. Tam*, 582 U.S. 218, 235 (2017).

Defendants' argument is untethered to any evidence, despite this inherently being a fact-intensive inquiry. They offer no evidence of the history of use of the medium at issue that would show it is government speech. A broad discussion of the Federal franking privilege is not evidence of how the privilege has been used in Michigan or what kinds of content newsletters using government resources have contained. Simply citing the offending rules themselves, which state that printing and mailing equipment may only be used for "official legislative business," does not establish a factual record of the history of the medium's use. *Ipse dixit* in the rules are not evidence. There is likewise no evidence as to public perception regarding newsletters and other publications distributed through the Business Office. Nor is there any evidence as to the level of control actually exercised by the Office in policing the messages it distributes, other than denying publication of Maddock's newsletter for viewpoint-based reasons. With no evidence as to any factor of this analysis, there is no basis to find that government speech is involved here.

Defendants' argument is not intuitive or legally supported, either. The House does not "set the overall message to be communicated," *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005), when different legislators are printing constituent mailers, some for and some against certain proposed legislation. The regulations at issue do not require that speech be in-line with the Governor or Legislature's position on a given issue. Nor could it, as "[t]he Legislature speaks through its statutes" and much of the speech at issue here is about proposed action, before the Legislature formally takes any position (*i.e.* by voting). *UAW-Ford Nat'l Educ. Dev. & Training Ctr. v. Detroit*, No. 242809, 2004 Mich. App. LEXIS 710, at *5 (Mich. Ct. App. Mar. 11, 2004).

While the Printing Rules state the Business Office's resources "shall be used for official legislative business only," this is a defined term with a broad scope which includes "issues of statewide interest or of general interest to an entire legislative district." ECF No. 1-1. And, while Defendants claim they have unreviewable authority to determine whether a proposed publication is for "official legislative business" (ECF No. 12 at ECF p. 33-34), this position is a tacit admission that Defendants wish to engage in consequence-free viewpoint-based discrimination. How easy it would be to cut off a favored avenue of communicating with one's constituents to legislators with whom Defendants disagree under the guise of saying their criticism of the government is not "official business," and then to avoid all repercussions by claiming that determination is an unreviewable political question. According to Defendants, they can tell Rep. Maddock that he can never send any constituent mailers on a trumped-up claim it violates a rule, and he and his constituents would have no recourse. The mendacity is telling.

Despite Defendants' reliance on the "official business" language, the regulations are not limited to speech on behalf of the entire Michigan Legislature. Indeed, as noted in *UAW-Ford* above, the Legislature speaks as a whole *only when it passes legislation*, not when its individual

members wish to speak to their constituents on issues that affect them or their own opinion on legislative issues. To claim that each individual legislator's speech constitutes government speech immediately shows the weakness in Defendants' position. If this argument is accepted, then the government is schizophrenic and routinely contradicts itself, as individual legislators express different and incompatible opinions on various issues affecting the general public all the time.

Defendants make the same failed argument as the government did in *Matal v. Tam*. In *Tam*, the government argued the system of federal trademark registration constituted government speech, as people who wanted to register "disparaging" trademarks were simply being denied a government benefit and could still convey their speech in other mediums, and allowing registration allegedly indicated an acceptance of the message being conveyed. 582 U.S. at 235. This is the same argument Defendants make here. The Supreme Court rejected this, noting that "[i]f the federal registration of a trademark makes the mark government speech, the Federal government is babbling prodigiously and incoherently. It is saying many unseemly things. It is expressing contradictory views. It is unashamedly endorsing a vast array of commercial products and services. And it is providing Delphic advice to the consuming public." *Id*. at 236. When treating publications in a given medium as government speech results in a government with a pathological dissociative identity disorder, that is a strong indication the speech at issue is not actually government speech.

In reality, much like the trademark regime, Defendants allow individual members of the Legislature to use government resources to publish speech to their constituents on a broad variety of topics. Such political speech is at the core of the First Amendment, and Defendants cannot justify their viewpoint-based restrictions.

### 2.1.2   Defendants' Restrictions on Speech are Viewpoint-Based and Do Not Satisfy Strict Scrutiny

Defendants' regulations are viewpoint-based restrictions on speech. Viewpoint-based restrictions are especially disfavored and must satisfy strict scrutiny. *McCullen v. Coakley*, 573 U.S. 464, 478. Defendants argue that their restrictions are content-based but not viewpoint-based, and thus are subject to rational basis review because the government is merely subsidizing the speech of citizens. ECF No. 12 at ECF p. 28-29. Defendants admit that viewpoint-based restrictions are subject to strict scrutiny in the government subsidy context. *Id*. at ECF p. 29.

Defendants argue that the regulations are content-based because they limit allegedly subsidized speech to "official legislative business." As explained above, this is a defined term within the regulations that is much broader than a common understanding of it. But even if that were not the case, Defendants' argument is unavailing. At best, the regulations relate to a limited forum in which "speaker-based restrictions may be allowed"—here, elected representatives. *Tam*, *supra* at 243.  It is trivially easy to think of circumstances in which "official legislative business" could include criticizing legislators or specific individuals; if a legislator wanted to send a newsletter discussing how Michigan needs a new data privacy law because Facebook and Mark Zuckerberg have been selling user data without permission, that would run afoul of the Printing Rules and Guidelines. If another legislator wanted to speak in opposition to such a law because Facebook and Mark Zuckerberg are trustworthy, then the regulations would allow that. Sometimes conducting "official legislative business" requires naming and shaming people. The regulations explicitly do not allow this, while they do permit praise of the same individuals. That is textbook viewpoint discrimination. "To be sure, the clause evenhandedly prohibits disparagement of all groups. … But in the sense relevant here, that is viewpoint discrimination: Giving offense is a viewpoint." *Tam*, *supra* at 243.  And while Defendants cite *Urban Justice Ctr. v. Silver*, 66 A.D.

3d 567, 569 (N.Y. App. Div. 2009), for the proposition that a bar on "disparaging" members of the legislature is not viewpoint-based, (1) that New York opinion is not binding (and no court has ever cited it for this proposition), and (2) it was decided before *Tam*, where the Supreme Court specifically found that a bar on "disparaging" statements was viewpoint-based.[1] Notably, the court in *Urban Justice* itself observed that "[a]s long as the restrictions are viewpoint-neutral and not aimed primarily at suppression of ideas, such regulation of subsidized speech does not offend the First Amendment." 66 A.D. 3d at 569. Under *Tam*, since "giving offense is a viewpoint," to the extent it is a regulation of subsidized speech, it is viewpoint based and aimed at suppressing ideas.

Through its policies, the Michigan House "discriminate[s] invidiously in its subsidies in such a way as to aim at the suppression of dangerous ideas," rendering the policies subject to strict scrutiny. *Regan v. Taxation with Representation*, 461 U.S. 540, 548 (1983) (cleaned up). Under this test, a restriction will be struck down unless the government demonstrates a "compelling interest," and the restriction is "narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). The restriction must also be "necessary." *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992). Defendants do not argue that the restriction survives strict scrutiny. For the reasons explained in the Motion (ECF 4 at ECF p. 16-18), they cannot and do not satisfy this exacting standard.

Nor do Defendants demonstrate that the regulations are not an unconstitutional prior restraint. It is not simply about who pays for the speech. Maddock is barred from speaking *ex*

---

[1] Defendants attempt to justify the regulations by pointing to provisions that are not viewpoint-based, such as bars on solicitations for political support. ECF No. 12 at ECF p. 31 n.12. But a viewpoint-based restriction is not saved simply because it is paired with a content-based restriction. Again, *Tam* is instructive, as the bar on registering "disparaging" marks was accompanied by bars on registration for non-viewpoint reasons, such as a mark not being distinctive or being confusingly-similar to another trademark. 582 U.S. at 252 (Kennedy, J. concurring).

*cathedra*, unlike colleagues who would take opposing viewpoints. Their speech would bear the mark that it is an "official" message; his speech would lack that imprimatur. Further, "even in the provision of subsidies, the Government may not aim at the suppression of dangerous ideas, and if a subsidy were manipulated to have a coercive effect, then relief could be appropriate." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587, 118 S. Ct. 2168, 2178 (1998) (cleaned up). Thus, Maddock is likely to succeed on the merits of his First Amendment claims.

### 2.1.3   Maddock's Claims are Not Barred by Sovereign Immunity

Defendants acknowledge that *Ex Parte Young*, 209 U.S. 123, 157 (1908), provides an exception to sovereign immunity for official capacity claims seeking prospective injunctive relief against state officials, so long as there is "some connection with the enforcement of the [challenged law]." The named Defendants argue that the exception in *Young* does not apply because they do not have "unilateral enforcement authority over the Legislative Council Rules – indeed, only Speaker Tate is a member of the Council." ECF No. 12 at ECF p. 16. This factual assertion attempting to pass the buck to some unidentified government official is found nowhere in the evidentiary record or the pleadings, however, and the Court may disregard it. And under *Young*, the relevant inquiry is not whether a government official has "unilateral enforcement authority," but rather whether they have "some connection" with enforcing the challenged law. 209 U.S. at 157. "Defendants are not required to have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty[.]" *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (citing *Young* at 157). Defendants are the ones charged with enforcing the challenged regulations and have been the ones enforcing them.

As attested in the Verified Complaint, Maddock received a notice from Defendant Birmingham that his proposed newsletter was rejected for violating the printing guidelines. ECF

- 7 -
Plaintiff's Reply in Support of Motion for a Preliminary Injunction

No. 1 at ¶ 31. While apparently insinuating, without evidencing, that Birmingham was unrelated to the enforcement of the printing guidelines, the unsupported insinuation is contradicted by the Verified Complaint and the notice. To the extent Defendants may argue someone else made the decision to reject the newsletter and Birmingham was simply a messenger, they have failed to rebut Plaintiff's evidence. Attorney arguments are not evidence.

Similarly, as attested in the Verified Complaint, Defendant Tate supervised the actions of Defendants Simon and Curtis, and acted through Defendants McCann and Birmingham, to enforce the Printing Rules and Printing Guidelines. ECF No. 1 at ¶ 16.  Defendants offer no evidence to the contrary and, therefore, fail to demonstrate that Plaintiff does not have a substantial likelihood of success.  Thus, these officials may be enjoined from enforcing the unconstitutional regulations.

### 2.2   Maddock will Suffer Irreparable Harm in the Absence of an Injunction

In First Amendment cases, the likelihood of success and irreparable harm analyses are inextricably connected, and a likelihood of success will always demonstrate irreparable harm. *Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 408 (6th Cir. 2022). Defendants claim otherwise, again citing *Urban Justice Ctr.* But that case is inapposite, as it dealt with a motion to dismiss, not a motion for a preliminary injunction, and never addressed the issue of irreparable harm. *Acrisure, LLC v. Edgewood Partners Ins. Ctr.*, No. 1:19-cv-170, 2019 U.S. Dist. LEXIS 244770 (W.D. Mich. Mar. 11, 2019), also has nothing to do with this analysis, as that is a trade secret case with no First Amendment component. *Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017), is likewise not a First Amendment case. As Plaintiff is likely to succeed on his First Amendment claim, he also has shown irreparable harm.

### 2.3   The Balance of Equities Tips in Maddock's Favor

Maddock is likely to prevail on his First Amendment claim, and thus the balance of equities is in his favor. Defendants counter with doomsaying about how not allowing it to violate

Maddock's First Amendment rights would upend long-standing legislative traditions (which violate members' constitutional rights, and thus *should* be upended), but they provide no evidence of these purported consequences, again relying solely on attorney argument. Defendants' dislike of Maddock's viewpoint is neither evidence nor substitute for whether the public is harmed by Defendant's unconstitutional viewpoint-based prior restraint. Defendants' ephemeral harm must yield to the Constitution.

### 2.4     The Requested Injunction Would Favor the Public Interest

Defendants do not dispute that preventing the violation of one's constitutional rights is always in the public interest. Rather, they only argue that the public may still hear Maddock's speech, so long as he funds its distribution himself. This sidesteps the problem of Defendants favoring some types of speech over others on the basis of viewpoint, the central issue in this case, and also ignores that the state providing such preferences in funding based on viewpoint inevitably distorts the information available to the general public, as viewpoints preferred by Defendants will be distributed, and thus heard, more readily than disfavored viewpoints. Moreover, while Defendants argue "the public at large has no interest in funding political rants," this is about publication, not funding, and Defendants nevertheless would publish, within their regulations, so-called "political rants," so long as the viewpoints are not of the type Maddock wishes to express. Thus, as with the other factors, furthering the First Amendment favors the public interest.

### 2.5     The Court Should Issue an Injunction Pending Appeal and Require No Bond

Defendants are correct that the test for determining whether to issue an injunction pending appeal is the same as the preliminary injunction analysis. Regardless, the Court should issue such an injunction if it does not grant the requested injunction to protect the significant constitutional issues at stake. "[I]n First Amendment cases, only one question generally matters to the outcome [of a motion for injunction pending appeal]: Have the plaintiffs shown a likelihood of success on

the merits of their First Amendment claim?" *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). Here, Maddock has done so and would undoubtedly do so on appeal.

Defendants do not identify any harm that would result from the issuance of an injunction, and so the Court should not require a bond. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). Defendants' citation to *Gerber v. Herskovitz*, No. 19-13726, 2022 U.S. Dist. LEXIS 67439 (E.D. Mich. Apr. 11, 2022) is inapposite—that case was about a stay of execution *vis a vis* the posting of a supersedeas bond. It has nothing to do with a bond for a preliminary injunction under the First Amendment. In the preliminary injunction context, "[w]aiver of the bond requirement is particularly appropriate when plaintiff alleges the infringement of a fundamental constitutional right." *Univ. of Cincinnati Chapter v. Williams*, No. 1:12-cv-155, 2012 U.S. Dist. LEXIS 89177, at *2 (S.D. Ohio June 27, 2012) (determining no bond was appropriate where the plaintiff alleged a First Amendment violation).

### 3.0   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff Maddock's Motion and enter a preliminary injunction precluding Defendants from promulgating and enforcing Legislative Counsel Printing Rule 6 and House of Representatives Printing Guidelines Rule 3(g), 3(h), & 3(af) or, in the alternative, issue an injunction pending appeal.

RANDAZZA | LEGAL GROUP

Dated: May 3, 2024.                              Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com

Matthew J. Hoffer
SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, MI 48906
Tel : (517) 886-6560
Email : Matt@bradshaferlaw.com

*Counsel for Plaintiff,*
*Matt Maddock*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 3, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Marc J. Randazza
Marc J. Randazza